**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

_____

| | |
|---|---|
| FILBERT C. VIALPANDO, | |
| Plaintiff, | |
| v. | No. 18-251-BRB-SCY |
| CHEVRON MINING, INC., | |
| Defendant. | |

_____

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**
_____

**BALDOCK**, Circuit Judge.*
_____

Plaintiff Filbert C. Vialpando, a retired coal miner, filed a motion for summary judgment (Doc. 11) against his former employer, Defendant Chevron Mining, Inc., to recover twenty percent additional compensation and interest under the Black Lung Benefits Act (BLBA) 30 U.S.C. §§ 901−944 for untimely payment of benefits. Vialpando asserts he is entitled to twenty percent additional compensation plus interest from Chevron for late monthly benefit payments from February 2011 to December 2017. In response, Chevron filed a motion for summary judgment (Doc. 15) against Vialpando arguing it timely made the benefit payments. The cross-motions for summary judgment ask this Court to decide

---

* Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

1

whether Chevron is obligated to pay Vialpando a twenty percent penalty and interest on any or all the benefits awarded under the BLBA. For the following reasons, the Court grants-in-part and denies-in-part Vialpando's motion and grants-in-part and denies-in-part Chevron's motion.

I. Case History

Plaintiff Filbert Vialpando worked for Chevron Mining, Inc. at the York Canyon coal mine in New Mexico. After nearly 29 years working as a coal miner, Vialpando contracted pneumoconiosis, a disease commonly known as "black lung." In February 2011, Vialpando filed a claim for benefits under the Black Lung Benefits Act (BLBA) with the U.S. Department of Labor Office of Workers' Compensation Programs. OWCP administers the Labor Secretary's programs under the BLBA. A year later, the OWCP Director issued a Proposed Decision and Order awarding Vialpando black lung benefits dating back to February 2011. The Proposed Decision and Order awarded Vialpando $12,197.90 in back payments and ordered Chevron to continue to pay benefits to Vialpando at the rate of $938.30 per month. The Proposed Decision and Order also warned Chevron that it would be liable for additional compensation and interest if Chevron failed to timely pay the benefits.[1]

---

[1] The Proposed Decision and Order stated, "[i]f payment is not made within thirty (30) days following the date that this Order becomes final and effective, the responsible operator becomes liable for interest, as provided in the regulations at 20 C.F.R. § 725.608. In addition, if payment is not made within ten (10) days after the 15th day of the month following the month for which benefits are payable, a penalty in the amount of 20% of the total compensation award will be due the claimant, in accordance with Section 14(f) of the Longshore and Harbor Worker's Act (LHWCA), as incorporated by Section 422(a) of the Black Lung Benefits Act, and 20 C.F.R. § 725.607." Doc. 11-2 at 4.

Chevron declined to pay benefits and timely sought a formal hearing before an administrative law judge (ALJ) contesting the benefits award set forth in the OWCP Director's Proposed Decision and Order. Shortly after Chevron requested a formal hearing, the OWCP Director sent Chevron an Initial Determination, which acknowledged Chevron's timely request for a formal hearing, calculated the benefits owed to Vialpando, and instructed Chevron to begin payments to Vialpando. As in the OWCP Director's Proposed Decision and Order, the Initial Determination warned Chevron that it would have to pay additional compensation and interest if it failed to begin payment ordered by the OWCP Director's Proposed Decision and Order.[2] On the same day the OWCP Director sent the Initial Determination to Chevron, the OWCP Director also sent a letter to Vialpando informing him the Black Lung Disability Trust Fund would prospectively pay Vialpando his benefits from the date of the Initial Determination "until [Vialpando's] claim is finally decided" because Chevron "declined to make payment to [Vialpando] until the issue is finally resolved." Doc. 11-4 at 1. The Trust Fund paid Vialpando interim monthly benefits from February 2012 until November 2017 when Chevron refused to pay.[3]

---

[2] The Initial Determination stated, "[s]hould [Chevron] fail to begin payment to the claimant, benefits will be paid by the Black Lung Disability Trust Fund in accordance with 20 C.F.R. § 725.420(a). If [Chevron is] subsequently determined to be liable for the claim, [Chevron] will be required to reimburse the Fund for all payments made up to that time. In addition, in accordance with § 725.420(c) [Chevron] will be liable for such penalties and interest as are deemed appropriate together with the payment of the claimant's attorney fee, if any." Doc. 11-3 at 1.

[3] The BLBA does not allow the Black Lung Disability Trust Fund to pay retroactive benefits. *See* 20 C.F.R. § 725.420(a) ("For claims filed on or after January 1, 1982, the

In September 2014, at a hearing before an ALJ, both Vialpando and Chevron presented evidence and arguments. Two years later, in its June 2016 Decision and Order Awarding Benefits, the ALJ found Vialpando qualified as totally disabled due to pneumoconiosis, awarded Vialpando benefits under the BLBA, and ordered Chevron to commence payment to Vialpando dating back to February 2011. On June 20, 2016, the OWCP Director received the ALJ's Decision and Order Awarding Benefits. Chevron then timely appealed the ALJ's decision to the U.S. Department of Labor's Benefits Review Board (BRB). In July 2017, the BRB affirmed the ALJ's Decision and Order Awarding Benefits.

On December 27, 2017, the OWCP Director issued a final calculation of benefits, which stipulated Chevron pay the following: (1) $976.40 per month in monthly benefits under the BLBA beginning December 2017 to Vialpando, (2) $11,259.60 for unpaid, past-due monthly benefits from February 2011 to January 2012 to Vialpando, (3) $66,781 reimbursement to the Trust Fund for interim benefit payments made by the Trust Fund to Vialpando from February 2012 to November 2017, and (4) $958.26 to the Department of Labor for medical and travel expenses it incurred regarding Vialpando's claim. Thereafter, Chevron paid Vialpando and the Trust Fund within thirty days of the December 27, 2017 letter and began making monthly payments to Vialpando.

---

payment of such interim benefits from the fund is limited to benefits accruing after the date of such initial determination.").

4

Vialpando brings this action to enforce payment of additional compensation and interest arising from Chevron's alleged late payment of monthly benefits awarded under the BLBA from February 2011 to December 2017.

## II. Standard of Law

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden to show the absence of a genuine issue concerning any material fact. *Celetox Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Boyz Sanitation Serv., Inc. v. City of Rawlins*, 889 F.3d 1189, 1195 (10th Cir. 2018) (quoting *Manganella v. Evanston Ins. Co.*, 702 F.3d 68, 72 (1st Cir. 2012)).

## III. Analysis

The Black Lung Benefits Act (BLBA) seeks "to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis." 30 U.S.C. § 901. Operators who employ coal miners covered by the BLBA are required to compensate disabled miners for medical problems and disabilities related to pneumoconiosis. The BLBA incorporates significant portions of the Longshore and Harbor Workers' Compensation Act (LHWCA), including

the disputed provision, 33 U.S.C. § 914(f), which provides a twenty percent penalty for failure to timely pay compensation:

> If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award is had as provided in section 921 of this title and an order staying payment has been issued by the Board or court.

33 U.S.C. § 914(f), *incorporated by reference into* the Black Lung Benefits Act, 30 U.S.C. §§ 932(a), (d). Section 914(f) is designed to "ensure that individual coal operators rather than the [Black Lung Disability Trust Fund] bear the liability for claims arising out of such operators' mines to the maximum extent feasible." *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 693 (7th Cir. 1987) (quoting S. Rep. No. 95-209, at 9 (1977)).

The Department of Labor regulations implementing the BLBA similarly provide additional compensation when an operator fails to timely remit payment. Under 20 C.F.R. § 725.607(a), if benefits "are not paid by an operator or other employer ordered to make such payments within 10 days after such payments become due, there will be added to such unpaid benefits an amount equal to 20 percent thereof." 20 C.F.R. § 725.607(a). An operator must pay a twenty percent penalty on unpaid benefit awards "unless review of the order making such award is sought as provided in section 21 of the LHWCA <u>and</u> an order staying payments has been issued." 20 C.F.R. § 725.607(a) (emphasis added). When an operator is liable for the payment of additional compensation under 20 C.F.R. § 725.607, "the beneficiary shall also be entitled to simple annual interest computed from the date upon which the beneficiary's right to additional compensation first arose." 20 C.F.R.

§ 725.608(a)(3). With this legal framework in mind, the Court addresses the parties' arguments.

## A. Additional Compensation

The black lung benefits regulations stipulate a twenty percent penalty against an operator if an operator ordered to make payments fails to remit them "within 10 days after such payments become due." 20 C.F.R. § 725.607(a).[4] Vialpando argues he is entitled to twenty percent additional compensation from Chevron for late monthly benefit payments from February 2011 to December 2017 because Chevron failed to remit payment within ten days of payment becoming due. Chevron contends it is not subject to a penalty because it timely paid monthly benefit payments once the award became final and the payments became due. To determine whether Chevron's payments were late and therefore subject to a penalty, this Court must first determine when an award becomes effective and second determine when payment under an effective order is due.

First, this Court must determine when a black lung benefits award becomes effective. Vialpando contends the ALJ's Decision and Order Awarding Benefits became effective on June 20, 2016 when the OWCP Director received the ALJ's order. In response, Chevron, argues an award is not effective until it is final. Chevron contends the ALJ order was not final until December 27, 2017 when the OWCP Director sent the final computation of benefits. Under the black lung benefits regulations, an ALJ's decision and order is

---

[4] 20 C.F.R. § 725.607(a) allows an operator to avoid the penalty by seeking review of the order under § 21 of the LHWCA and obtaining an order staying payments. This exception is not at issue because Chevron did not seek a stay.

7

effective "when filed in the office of the district director." 20 C.F.R. § 725.479(a). Accordingly, the ALJ's Decision and Order Awarding Benefits became effective on June 20, 2016 when the OWCP Director received the ALJ's order.

The Department of Labor and every court to consider the issue corroborates this interpretation of 20 C.F.R. § 725.479(a). Eighteen years ago, the Department of Labor promulgated revisions to the black lung program regulations to prevent the argument Chevron makes before this Court. *See* Final Rule, *Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended*, 65 Fed. Reg. 79,920, 80,009 (Dec. 22, 2000) ("The most important changes [to section 725.502] were designed to make clear to responsible operators their obligations under the terms of an effective award of benefits even though the claim might still be in litigation.").

Since then, courts that have evaluated black lung benefit payments during the pendency of litigation similarly conclude an award becomes effective when filed in the office of the district director regardless of pending litigation. For example, in *Nowlin v. E. Associated Coal Corp.*, the Northern District of West Virginia explicitly addressed the difference between an "effective" award and a "final" award and explained an award is "effective at the time it is filed and automatically becomes final unless timely appealed." *Nowlin v. E. Associated Coal Corp.*, 331 F. Supp. 2d 465, 472 (N.D. W. Va. 2004). The district court explained, "the concepts of effectiveness and finality are distinct; although an appeal delays an order's finality, it does not prevent the order from becoming effective." *Id.* The district court concluded penalties can be assessed prior to an award being final, so long as payment is due according to an effective award. In other words, an ALJ award

becomes effective when filed in the office of the district director and an effective award becomes final after thirty days, if the employer fails to appeal, or after the employer has exhausted its appeals. 20 C.F.R. § 725.479(a). Here, the ALJ order dated June 7, 2016, became effective on June 20, 2016 when the OWCP Director received the ALJ order.[5]

Second, the Court must determine when the payments pursuant to the effective ALJ order become due. Vialpando argues the monthly benefit payments were due on the fifteenth of every month from July 2016 to December 2017—the fifteenth day of the month following the month for which the benefits are payable. Vialpando also argues the lump-sum reimbursement for back benefits from February 2011 to June 2016 was due on July 20, 2016—thirty days after the ALJ award became effective. Chevron contends all benefit payments were not due until January 26, 2018—thirty days after the OWCP Director issued a computation of benefits letter dated December 27, 2017.

1. Payments payable before June 20, 2016

Under the black lung regulations, payments payable for periods before and after the effective date of an order are due at different times. For benefits payable prior to the effective date of an order, so-called "back payments" or a "lump-sum reimbursement"

---

[5] Alternatively, Chevron argues benefits did not become due until the award became final when the "BRB affirmed the award on July 12, 2017, . . . and the sixty days that Chevron had to appeal the adverse decision elapsed" on September 12, 2017. Doc. 16 at 2. Vialpando agrees the order did not become final until July 12, 2017 when the BRB affirmed the ALJ's award but argues a final award does not dictate when benefits become due. The Court rejects Chevron's second argument for the same reasons stated above regarding finality.

9

payments, are due thirty days after a district director issues a computation. 20 C.F.R. § 725.502(b)(2). Section 725.502(b)(2) requires:

> Within 30 days after the issuance of an effective order requiring the payment of benefits, the district director shall compute the amount of benefits payable for periods prior to the effective date of the order, in addition to any interest payable for such periods (see § 725.608), and shall so notify the parties. . . . Benefits and interest payable for such periods shall be due on the thirtieth day following issuance of the district director's computation.

20 C.F.R. § 725.502(b)(2). Vialpando argues the thirty-day period in section 725.502(b)(2) "is best understood as running from when the ALJ's award was received by the District Director and was thus 'effective.'" Doc. 11 at 10. Vialpando fails to provide any authority to support his two-paragraph argument. Still worse, Chevron fails to even cite the relevant regulation and provides a mere one-sentence conclusory statement to support its conclusion that all payments were not due until thirty days after the OWCP Director issued its computation.

Here, the OWCP Director did not comply with section 725.502(b)(2) when it failed to compute the amount of benefits payable for periods prior to the effective date of the order within thirty days after the issuance of an effective order requiring the payment of benefits. *See* 20 C.F.R. § 725.502(b)(2). For reasons unknown, the OWCP Director did not compute the amount of benefits payable until December 27, 2017. Computation of the benefits is a "prerequisite[] required for the benefits to become due." *Nowlin*, 331 F. Supp. 2d. at 471 (citing 20 C.F.R. § 725.502(b)(2)). Because the OWCP Director did not issue a computation until December 27, 2017, the back benefits did not become due until thirty days later, on January 26, 2018. Further, given the ten-day grace period, additional

10

compensation did not begin to accrue until February 5, 2018. 20 C.F.R. § 725.607(a). Accordingly, Chevron is not subject to additional compensation on benefits payable for periods prior to the effective date of the order from February 2011 to June 2016 because Chevron timely paid Vialpando within thirty days of the December 27, 2017 letter, when the lump-sum reimbursement payments became due.

2. Payments payable after June 20, 2016

For benefits payable after the award's effective date, "monthly benefits, at the rates set forth in § 725.520, shall be due on the fifteenth day of the month following the month for which the benefits are payable." 20 C.F.R. § 725.502(b)(1). Vialpando contends Chevron was obligated to make monthly payments beginning on July 15, 2016, the fifteenth day of the month following June 20, 2016 when the ALJ award became effective. Chevron, on the other hand, argues payment did not become due until the ALJ award became final and it received the OWCP Director's December 17, 2017 letter. Vialpando has the better argument here. Unlike the lump-sum reimbursement, monthly benefits became due when the award became effective (without any prerequisite computation from the OWCP Director). After the ALJ award became effective on June 20, 2016, monthly benefits were due beginning on July 15, 2016 and each month thereafter. Because Chevron did not pay monthly benefit payments until January 2018, Chevron owes an additional twenty percent compensation on the total value of eighteen missed monthly payments from July 2016 until December 2017 for failing to timely remit payment to Vialpando.

11

### 3. Payments made by the Black Lung Disability Trust Fund

Separate from its "effective order" versus "final order" argument, Chevron also argues it should not be subject to a penalty while the Trust Fund made payments to Vialpando. Chevron alleges such a penalty is "unworkable and illogical because an operator would be responsible for paying a penalty on benefits that were errantly awarded." The plain language of 20 C.F.R. § 725.607(b) forecloses Chevron's argument. Specifically, the twenty percent penalty applies "[i]f, on account of an operator's . . . failure to pay benefits . . . , benefit payments are made by the fund, the eligible claimant <u>will nevertheless be entitled to receive such additional compensation</u> . . . , with respect to all amounts paid by the fund on behalf of such operator." 20 C.F.R. § 725.607(b) (emphasis added). Here, the Trust Fund paid Vialpando monthly benefits from February 2012 to November 2017. Under the plain language of section 725.607(b), Vialpando is entitled to additional compensation for benefits payments made by the fund if Chevron failed to pay those payment once they became due. As discussed above, Chevron timely paid the lump-sum reimbursement payments once they became due. Accordingly, Vialpando is not entitled to additional compensation on the benefits paid by the fund from February 2012 to June 2016. Vialpando is entitled, however, to additional compensation on the benefits paid by the fund from July 2016 to November 2017 because Chevron did not timely pay those monthly benefits once they became due.

### B. Interest

Vialpando argues Chevron owes interest on all unpaid additional compensation, including the lump-sum reimbursement payments from February 2011 to June 2016 and

12

the monthly benefit payments from July 2016 to December 2017. In response, Chevron argues that it is not subject to interest because it timely paid Vialpando all benefits within thirty days of the OWCP Director's 27, 2017 letter. Under 20 C.F.R. § 725.608(a)(3), "[i]n any case in which an operator is liable for the payment of additional compensation, (§ 725.607), the beneficiary shall also be entitled to simple annual interest computed from the date upon which the beneficiary's right to additional compensation first arose." 20 C.F.R. § 725.608(a)(3).

As discussed in section III.A.2, Chevron is liable for payment of additional compensation on the monthly benefit payments from July 2016 to December 2017 because Chevron failed to timely pay Vialpando when the benefit payments became due. Under 20 C.F.R. § 725.608(a)(3), Vialpando is entitled to simple annual interest on the unpaid additional compensation. For the monthly benefit payments, payments were due on the fifteenth of each month from July 2016 to December 2017. 20 C.F.R. § 725.502(b)(1). When Chevron failed to timely pay the benefits, interest on each payment began to accrue on the twenty-fifth day of each month from July 2016 to December 2017 (ten days after each monthly payment became due). For the lump-sum reimbursement, however, Chevron timely paid the lump-sum benefits that were due thirty days after the OWCP Director issued a computation of those benefits on December 27, 2017. The lump-sum reimbursement was due on January 26, 2018. Chevron timely paid the lump-sum reimbursement and is therefore not subject to additional compensation and interest.

IV.

In sum, Chevron can challenge an award, but it cannot ignore an award during the challenge. Chevron's claim that it did not owe any money during the pendency of its appeal of the ALJ award is wrong under the language of the black lung regulations, other courts' interpretations, and the Department of Labor's explanations. Vialpando is entitled to twenty percent additional compensation on overdue payments from July 2016 to December 2017, plus interest, pursuant to 33 U.S.C. § 914(f). For the foregoing reasons, Chevron's Motion for Summary Judgment (Doc. 15) is DENIED-IN-PART and GRANTED-IN-PART and Vialpando's Motion for Summary Judgment (Doc. 11) is DENIED-IN-PART and GRANTED-IN-PART.

Entered for the Court
this 16th day of October 2018

_____
Bobby R. Baldock
United States Circuit Judge
Sitting By Designation